We'll move now to Appeal 25-1408. This is United States v. Carney. We'll begin with oral argument on behalf of the appellant, Mr. Goodman. Thank you. You're welcome. May it please the Court, Counsel. My name is Leonard Goodman. I'm the attorney for Mr. Ausarian Carney. To bolster a weak case that my client was the slender black man who assisted his older sister in a failed kidnapping plot, the government introduced letters written by the sister, which she attempted to send from her jail cell prior to trial, demanding that the recipients testify in support of a false alibi defense. No limiting instruction was given, allowing the government to tell the jury directly to consider this evidence as direct evidence of Mr. Carney's guilt. Counsel, there was no objection to this below, correct? There was not, Your Honor. Okay. And when I'm looking at plain error, I'm having an issue with plain error in Bruton, right? And I guess, you know, you have Bruton, you have Crawford, but at its heart, we're talking about a confrontation, right? So isn't this akin to us reviewing a defense attorney's decision not to cross-examine someone? How do we do that under plain error? There's certainly no evidence that this was an intentional waiver here. Circumstances are a little bit odd here because this issue, there was no pretrial motions where the government announced its intention to use this evidence against Mr. Carney. In fact, this sort of came up at the last minute because there was a fourth letter which the sister wrote, which made threats against the judge and the prosecutor and the victim, and so it was all kept under seal. And this is sort of revealed at the last minute. The government initially says that it's not going to use this and it's case-in-chief. It's only going to use it if the defendants present an alibi defense. Sounds like there might have been a lot of great objections. Well, certainly, Your Honor, I wish the lawyer had objected and made an issue. The judge noted it, but I don't think that the lawyer ever expected this. First of all, the letters are hard to read. So when they were sent out, I don't know that the lawyer was aware that these were implicating his client. Although you could certainly read your client's name in the letters. I agree the letters are hard to read, but you could pick up your client's name. I'm not going to defend the attorney's conduct. He does indicate that the judge had given a limiting instruction at some point, but then the prosecutor says, well, we're going to redact this one thing that the judge was concerned about. But I don't think anyone understood, well, there was a lot of other things in those letters that were even more incriminating. But I'm just having a hard time looking at this under plain error when defense attorneys decide to let evidence in and not cross-examine it for all sorts of reasons all the time. That's a choice of trial counsel. Well, yeah, I don't think there's any cause to say that this was a deliberate waiver. This was a forfeiture. The lawyer didn't see it. This came up at the last minute. There was no pretrial briefing of this issue. There's no motion to eliminate with respect to using this against Mr. Carney. So I think you agree then plain error would apply? Well, I'm not going to spend my time arguing that. I think you could make the case that it was brought to the attention of the judge. The judge expressed concern. He instructed the prosecutors to redact. The prosecutor did not. The prosecutor took out the one thing that the judge had brought to their attention. But I think under plain error, we clearly win. Let's go to the Sixth Amendment, which is the thrust of your argument. In order for there to be a Sixth Amendment violation here, the defendant had to have the right to confront the witness in the first place. And Crawford, the Supreme Court case, has made clear that in order to do that, the statements have to be testimonial and hearsay. How were the co-defendant's statements in these letters testimonial? Well, they were clearly hearsay. Let's go to the testimonial first. They were testimonial in my view, although I think we win, even if they're just hearsay under standard hearsay rules. But it has to be testimonial in order for you to win. And the Supreme Court has said that in order to determine if it's testimonial, it applies a primary purpose test. And the primary purpose of the conversation has to be to create an out-of-court substitute for that testimony. And it's pretty clear here that she wrote these letters hoping that they would never see the light of day, other than the witnesses who she was trying to coach to create an alibi for her. How can you argue that's testimonial or that the primary purpose was to substitute for testimony? The primary purpose was to tell people how to testify at her trial. And if we look at the case that we rely on, Lyle v. Kohler, this is a very carefully raised case. Lyle is pre-Crawford. It is. I understand that, Your Honor. So that doesn't work anymore post-Crawford. Well, that case has been cited for many. It's a widely cited opinion and in post-Crawford decisions. It doesn't work anymore for the testimonial piece post-Crawford. Clearly there's no discussion of testimony, but what the court says is you have to look at the inference and how the hearsay is being used by the prosecutor. And what they say is that the prosecutor introduced the letters because by inference they assert the proposition of fact that both defendants committed the crime and hence need an alibi. That's what the court said. So you have to look at the inference. Why was this used by the prosecutor? Look at the closing argument. The prosecutor used it as direct evidence of the defendant's guilt. This is precisely the type of hearsay that the Supreme Court held in Bruton was so prejudicial that limiting instructions were presumed ineffective. How is this being offered for the truth of the matter when it's all a lie, it's all a false alibi? It's being used by the prosecution to show guilt, and it's the inference. But the hearsay, it has to be offered for the truth of the matter. Yes, but what the Sixth Circuit says is that you have to look at the inference in the letter. The inference is, yes, it's not offered to show that she was at her grandmother's house with Osirian. It's used by the prosecution in this case to show that by inference she and her younger brother Osirian are the perpetrators and both need a false alibi. Would you like to reserve the remainder of your time? I'd like to reserve. I'd like to mention the sentencing argument as well.  Let me just say a 24-year sentence for somebody with no criminal background, the judge relied on a misinterpretation of the record urged by the prosecutor that he left this man to die. It's clear from the record that he facilitated the victim's escape behind the back of his sister without her consent. After she had already was overheard saying, we still think this MF-er's got money, he comes back downstairs and says, I've got an idea, facilitates his escape. So thank you. Thank you, Mr. Goodman. Mr. Kinstrow, we'll move to you now for argument on behalf of the appellee. May it please the court. Good morning, Your Honors. Jeff Kinstrow on behalf of the United States. Beginning with the Confrontation Clause claim, I think the defendant has all but conceded that this issue is forfeited and so review is only for plain error. Not only was there no objection in the district court, but certainly there wasn't any objection on constitutional grounds. The defendant, I think the alternative would be that he's asking for de novo review before this court because he's presenting a constitutional claim is what his opening brief says. But even if we were to accept everything he says about the district court's  certainly he wasn't presenting any constitutional claim in the district court. And so for that reason alone, his claim is forfeited. And the focus in the district court was on this one statement on that one letter. The government explained clearly what it was going to do to redact that one page. It's exactly what it did. And during the presentation of evidence that confirms the party's and the court's understanding, because the remainder of the letters was read into the record during the presentation of evidence, neither defense counsel nor the court expressed any concern with the redactions being consistent with the court's order. Is the way this is used in closing, does that imply the truth of the matter asserted? No. So this gets to the potential hearsay objection. Now there is not a hearsay issue before this court on a few. The sole claim that the defendant is raising is confrontation clause, which fails for other reasons to be sure is as defense counsel said this, this evidence was used to show guilt, but the defendant's argument is conflating whether evidence is circumstantial evidence of guilt with whether it's circumstantial evidence of guilt because of the truth of the matter asserted by the statement. And that's where it falls down. Hearsay is only an out of court assertion offered for the truth of the matter asserted by the statement. Everything that the statements here assert is demonstrably false. And in fact, if it were true, the government would lose because that would mean that neither the defendant nor his sister were at the kidnapping. What about the statement? And I'm paraphrasing, but if you testify falsely, I'm going to get, I promise to give you money. Is that a true statement? Um, I'm offering you money to testify falsely. Was that, was that true? That's an assertion or that's not an assertion. So it's not an assertion. In fact, it's an offer to pay. So that wouldn't be hearsay, but what, what made this relevant here is not the truth of any matter asserted in the  It was the sister's acts of attempting to orchestrate a false alibi and including her brother in the alibi, which is circumstantial evidence of his guilt because it shows her understanding that he needs an alibi just as she does. But that inference, the inference of this defendant's guilt doesn't rely on the truth of anything she says in her, in her letters. And it doesn't rely in any way on her credibility or the reliability of the declarant here. In fact, it overtly relies on, on her incredibility. She's attempting to orchestrate a false alibi. Um, so, so I think that the defendant relies on Lyle, which adopted at least a version of this argument in the government's view, the dissent in Lyle was correct. It was persuasive and it recognized the difference between whether the evidence is being used as circumstantial evidence of guilt and whether it's evidence of guilt because of the truth of what the letter asserts or what this, the statements assert, um, that's consistent with this court's precedent as well. Um, including white Eagle there, the court addressed a similar claim. And it said that the statements were not being used to offer. We're not being offered for the truth of any matter asserted. The evidence in fact, show that they were obviously false. And that's just the same here. The assertions in these letters that,  that the defendant's sister and the defendant were elsewhere at the time of this kidnapping are demonstrably false. And that's what makes them relevant because the sister is attempting to orchestrate a false alibi, attempting to pay people to offer this fabricated testimony. And the fact that she's, um, that she is trying to orchestrate this false alibi shows that she is guilty and that the defendant is as well. Are her directions in the letter that are designed to create a false alibi? Are they even assertions in the first place? I know you answered the one sentence that judge Kohler pointed out, but the rest of it, it seems like there's a question as to whether or not they're assertions. Yeah. Very little, if anything would be assertions in some extent, she's saying like, here's the story. You don't remember anything else. Um, perhaps that could be construed as her assertion of, of those facts are true. But of course, in context, it shows that the facts are actually false. She's, attempting to incentivize other people to say things that are false in order to support her defense.  so, so I think that very little of that would actually be assertions and nothing of it was offered for the truth of any matter asserted in the letters. At the Supreme court, Crawford is taking some shots. Um, do any of the criticisms of Crawford, including the testimonial requirement, implicate the arguments in this case? I'm not sure exactly what your honor is referencing the, I think the testimony requirement is very well settled, including cases like Ohio versus Clark Davis, um, cases within the last decade or so. I, I'm not aware that those cases have been undermined in any way. Um, and. The government's view is that that's well settled and supported, uh, by the sixth amendment itself, by the underpinnings and the history of that amendment. Um, and I think there's just no serious argument to be made here that this is testimonial as your honors have, have recognized the co-defendant attempted to have these letters smuggled out of jail precisely. So they wouldn't be, um, so they wouldn't fall into law enforcement hands and wouldn't be used at  And on top of that, they were attempting to orchestrate a false alibi. So the letters themselves, um, once they were discovered, you know, the jig is up there. Um, so that the letters themselves were not created for the primary purpose of trial testimony. The co-defendant wanted very much for the letters not to be disclosed. And this court and really every other court that's considered it has held in those circumstances that the statements are not testimonial, um, statements that are being made to friends or acquaintances to other inmates that are unwittingly find them way to law enforcement are really the heartland of non-testimonial evidence. It has no, um, no relationship to trial testimony, to statements to law enforcement officers that are being made to try to gather evidence. This was a co-defendants statements that were attempting to orchestrate a false testimony, false alibi that unwittingly made their way to law enforcement, um, which is an independent ground on which to reject the complication clause claim. Um, judge Fuller to your earlier point about the standard of review here, and this being a confrontation clause claim, that's exactly what this court said in Fenner, where the, the confrontation clause essentially arises out of the right to cross examine. And just like a defense counsel's decision, not to cross examine is not something that this court would review on plain error review. Uh, the confrontation clause really involves those same principles. So even if the defendant could get through each of the first three steps of plain error review, there still wouldn't be no basis for review or for relief under the fourth prong, which is discretionary and asked whether the issue, um, it implicates the fairness of the proceedings. Um, on top of that, um, not only does the defendant fail in the first and second prongs as well as the fourth, but he hasn't shown any, any likelihood of a different verdict. Um, the, the evidence in this case was very strong and it was based on the, um, the forensic evidence and the digital evidence that showed that he was working with his sister, that he had his fingerprints on the notebook that the victim brought into the house and it was abandoned in his car only two hours later. So it was only the kidnappers that would have handled that. And both defendants fingerprints were on that. The defendant's fingerprints were also on the clean strips and clean roll of duct tape that were found in the house. And the defendant's reply brief, he suggested there was no testimony that those were actually clean items that had been placed there recently. That's incorrect. On page seven of the transcript of day three of trial at faculty, one 60 square testimony, that those items were fresh. They look like they've been placed there recently. They had this defendant's fingerprints on them. The letters meanwhile, occupied a very small part of the government's case and the closing argument. And the references to this defendant are really passing references. They simply include him among the people that the co-defendant claimed to be around. So this, this is not nearly as direct as like the six circuits decision in mile where it was very obvious that the only reason the defendant would be saying those things for the co-defendant would be saying those things because the defendant was part of it as well. Here, the sister just included this, this defendant among the people she put, she claimed to be around, but it wasn't nearly as direct. So there's really no possibility that those letters had any effect on trial concerning sentencing. I think the defendant asserts both procedural and substantive errors, but at the end of the day, his arguments really boil down to a disagreement with the, with the weight that the district court gave to, to his arguments and mitigation. But I don't think there's any argument to be had that the court didn't address those arguments. And in fact, the court's language almost mirrored what defense counsel said, just like defense counsel, the set the court said that the primary mitigating factor here is that it wasn't the defendant's plan. And that the defendant at least allowed the victim to have a chance to survive. To the defense counsel is arguing here this morning. And in his brief that he actually took some extraordinary measures to facilitate this, the victim's escape defense counsel expressly conceded and disclaimed such an assertion in the district court. He said, I don't know what the defendant did. I don't know if he did anything at all. All I know is he, he at least gave the victim a chance to survive on this very cold day. The district court said that very same thing. And so that there was no procedural error. And this is a below guideline sentence that is not substantively unreasonable. Thank you, Mr. Kinstra. Thank you, Mr. Goodman. We'll go back to you now for rebuttal argument. I'd like to focus on two points. First under plain error, what this court has said, it must affect substantial rights, which means serious prejudice. We can meet that standard in this case. On the issue of testimonial hearsay here, we have the sister telling people how to testify at her trial. We have evidence. We have it's clear that it's used directly by the prosecutor to infer guilt. And third, there's no indicia of trustworthiness in other cases. Where the Supreme court has said, this is not testimonial hearsay. They look at is there evidence of trustworthiness? For example, is it something that's a nine one one call to defeat an ongoing emergency? Is it somebody that's just caught on tape, bragging about their crime and, and talking about their co-conspirators? No, this is some, there's no indication that this is trustworthy. You have a mentally ill woman who's writing letters, demanding that people give false alibi. We don't know why she included her brother. She may have thought, well, we're we're on trial together. So we're going to, we're going to go down together. Or she may have thought that her family would be much more sympathetic. If her younger brother was going to go down as well and they might respond better. We don't know. That's why we need confrontation. That's why we need cross-examination. Thank you. Thank you, Mr. Goodman. Thank you, Mr. Kinstro. The case will be taken under advisement.